IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MID-CONTINENT CASUALTY COMPANY, | ) ) ) | |
| Plaintiff | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. H-04-02913 |
| SHELTER MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Defendant | ) ) | |

## MEMORANDUM AND ORDER

The Plaintiff, Mid-Continent Casualty Company ("Mid-Continent"), asks this court to hold the Defendant, Shelter Mutual Insurance Company ("Shelter"), liable for an equal share of defense costs. The Plaintiff's motion is **DENIED**.

## I. BACKGROUND

On November 18, 1999 twelve students at Texas A&M University died and many others suffered injuries when the bonfire they were building collapsed. Michael Rusek operated a crane involved in erecting the wooden structure that the students had planned to ignite. Consequently, Mr. Rusek became a defendant in the subsequent wrongful death and personal injury lawsuits. Mid-Continent attached 19 of the petitions and amended petitions as Exhibit A to its motion. Doc. 15. Each petition identified Mr. Rusek as a resident of Harris County, Texas and not a resident of Arkansas.

Mr. Rusek's mother, Ellen Rusek, lived in Arkansas. She held a homeowner's policy from Shelter. This policy is attached to Mid-Continent's motion as Exhibit B. Its declaration page

lists identified only "Ellen J. Rusek" as an insured and listed only a "family frame dwelling… near Garfield, AR."  Doc. 15, Exh. B.

Shelter wrote a letter to Mr. Rusek dated July 21, 2001.  In the letter, Shelter explained that, "[o]ur investigation indicates that" Mr. Rusek "would not be an insured under the policy."  However, Shelter stated that it was "willing to defend" Mr. Rusek, but that "at any time" it deemed "it advisable to do so," it would "discontinue our efforts in this matter after reasonable notice."  Doc. 15, Exh. C3.  Subsequently, it hired Glennis Sims to defend Mr. Rusek.

Mid-Continent insures the Regents of Texas A&M.  According to the policy held by Texas A&M, Mr. Rusek was considered a co-insured.  Consequently, Mid-Continent accepted a duty to him and hired Britt Harris as Mr. Rusek's counsel.  After attorneys hired by Mid-Continent began defending Mr. Rusek, Shelter stopped funding Mr. Rusek's defense.

Mid-Continent filed suit against Shelter for (1) half of the cost of Rusek's defense so far and (2) a declaratory judgment that Shelter was liable for half of all subsequent costs.  Shelter counterclaimed seeking a declaratory judgment that it had no duty to defend Rusek.

Mid-Continent moved for summary judgment.  Doc. 15.  Shelter responded, but made no cross-motion for summary judgment.  Doc. 16.  The parties have also filed briefs seeking to limit the evidence that this court may consider when deciding the pending motion for summary judgment.

## II.  LEGAL STANDARD FOR SUMMARY JUDGMENT.

A movant seeking summary judgment must inform the court of the basis of his motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c);  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant asserting an affirmative defense,

he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material; i.e., only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 248, 256-57 (1986). The movant need not negate the opposing party's claims nor produce evidence showing the absence of a genuine issue of fact, but may rely on the absence of evidence to support essential elements of the opposing party's claims. *Celotex*, 477 U.S. at 323-25. However, "[o]n summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (citing *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)). If it is evident that the party seeking summary judgment against one who bears the proof burden has no access to evidence of disproof, and ample time has been allowed for discovery, he should be permitted to rely upon the complete absence of proof of an essential element. *Fontenot v. Upjohn,* 780 F.2d at 1195. If the moving party fails to meet its initial burden, the motion must be denied, regardless of the non-movant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

If the movant meets his burden, the burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. Fed. R. Civ. P. 56(c). The non-moving party may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence, and specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 256-157. The non-movant may point to evidentiary documents already in the record that set out specific facts showing the existence of a genuine issue.

*Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).  Furthermore, the non-movant does not likewise have to present its own evidence, but may point out genuine issues of fact extant in the summary judgment evidence produced by the movant, if any.  *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988).

### III. LEGAL ANALYSIS

Texas courts have jurisdiction over the lawsuits that Mid-Continent has asked Shelter to defend and both parties agree that Arkansas law governs Shelter's duties under the policy held by Ms. Rusek because the contract was formed in Arkansas.  *St. Paul Mercury Ins. Co. v. Lexington Ins. Co.,* 78 F.3d 202, (5th Cir. 1996).

Shelter issued a policy requiring it to, "defend the insured at our expenses, using lawyers of our choice" against a lawsuit "for liability under this coverage[.]"  Doc. 15, Exh. B, Section II.  An "'insured' means:" "the insured named in the Declarations" and "relatives [of the named insured] living in [the named insured's] household[.]"  Doc. 15, Exh. B.

According to Mid-Continent, Arkansas law requires an insurance company to defend an insured if any possibility that the claim might be covered exists.  *Madden v. Continental Cas. Co.,* 922 S.W.2d 731 (Ark. Ct. App. 1996).  Thus, "[i]t is not what the insurance company may have gleaned from its outside investigation: it is the allegations made against the insured – however groundless, false, or fraudulent such allegations may be – that determine the duty of the insurer to defend the litigation against its insured."  *Equity Mut. Ins. Co. v. Southern Ice Co.*. 334 S.W.2d 688, 693 (Ark. 1960).  Although Shelter disagrees with this interpretation of the law of Arkansas law, the disagreement is immaterial to this court's ruling because Mid-Continent has not produced evidence that would entitle it to summary judgment under either legal standard.

Mid-Continent's argument raises an initial question:  Do the allegations of the petitions and terms of the policy raise any possibility that Mr. Rusek is an insured under the policy

Shelter issued to Ellen Rusek? They do not. Each of the 19 petitions and amended petitions identify Mr. Rusek as a resident of Harris County, Texas. They do not identify Mr. Rusek as the son of Ellen Rusek. The policy itself mentions only a residence in Garfield, AR and names only Ellen Rusek in the declarations. Mid-Continent never explains how any of the pleadings raise the possibility that Shelter might be obligated to defend Mr. Rusek.

Only the letters attached as Exhibit C to Mid-Continent's motion connect Shelter to Mr. Rusek. Those letters constitute knowledge "gleaned from [an] outside investigation" and cannot be considered under Mid-Continent's interpretation of Arkansas law. Even if this court were to consider the letters, they do not indicate that Mr. Rusek is an insured. In fact, Shelter explicitly stated that it did not believe that Mr. Rusek was an insured. Thus, Mid-Continent has not met its burden of showing the absence of a material fact.[1]

Nevertheless, Shelter did promise to defend Mr. Rusek until it provided "reasonable notice." Mid-Continent would have the court enforce this promise. However, the promise is not enforceable.

A court will not enforce a promise as a contract unless both parties to the agreement receive some form of consideration. *Kearney v. Shelter Ins. Co.,* 29 S.W.3d 747, 750 (Ark. Ct. App. 2000) (citing *Eustice v. Meytrott,* 140 S.W. 590 (1911)). In *Kearney,* an attorney promised to defend the subrogation interests of an insurance company. The insurance company offered him no consideration for doing so. Without mutual consideration, the Arkansas Court of Appeals remanded the case for trial because the insurance company had not established a binding contract on which the trial court could base an order of summary judgment. Because Mid-Continent produced no evidence suggesting that Mr. Rusek was an insured under his mother's policy, the premiums she

---

[1] The court has not formally analyzed the additional evidence that Shelter submitted and to which Mid-Continent objected because Mid-Continent's motion for summary judgment should be denied regardless of how this court interprets Shelter's evidence.

paid do not constitute consideration for Shelter's promise to defend Mr. Rusek.  Similarly, Mid-Continent produced no evidence that Shelter received any other consideration for its promise to defend Mr. Rusek.   Consequently, Arkansas law does not provide Mid-Continent with any contractual remedy.

As an alternative theory of recovery, the insurance company in *Kearney* argued that it could recover under the theory of promissory estoppel.  Arkansas incorporates the Restatement (Second) of Contracts, § 90 into its law:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.   The remedy granted for breach may be limited as justice requires.

*Id.,* (citations omitted)

In *Kearney,* the Court of Appeals held that the insurance company had not produced evidence that it actually, or reasonably, relied on the attorney's promise to safeguard its interests.  Likewise, Mid-Continent has not produced any evidence that it relied on Shelter to its detriment.  Mid-Continent hired an attorney to replace the attorney hired by Shelter.  The court has no evidence that any attorney missed a court hearing, misplaced a document, or allowed a deadline to pass because Shelter failed to provide notice that it would no longer defend Mr. Rusek.  In fact, Mid-Continent did not allege that the transition between the attorneys was anything but smooth.

In addition to the general contract doctrines that prevent Mid-Continent from recovering from Shelter, binding case law specifically prevents the doctrine of waiver or the doctrine of estoppel from expanding the scope of an insurance contracts:

> [T]he doctrine of estoppel does not apply to extend the scope of coverage under an insurance policy, which is conceded by appellants. *Life & Cas. Ins. Co. v. Nicholson,* 246 Ark. 570, 439 S.W.2d 648 (1969). In *Peoples Protective Life Ins. v. Smith,* 257 Ark. 76, 514 S.W.2d 400 (1974), this court held:

> The doctrine of waiver or estoppel cannot be given the effect of enlarging or extending the coverage as defined in the contract, nor can it create a contract of insurance, since a cause of action cannot be based on a waiver.
>
> The doctrine of waiver or estoppel based upon the conduct or action of the insurer, is not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom and the application of the doctrine in this respect is to be distinguished from the waiver of, or estoppel to deny, grounds of forfeiture. That is, conditions going to the coverage or scope of the policy, as distinguished from those furnishing a ground for forfeiture, may not be waived by implication from conduct or action, without an express agreement to that effect supported by a new consideration.

*Johnson v. Encompass Ins. Co.,* 130 S.W.3d 553, 559 (Ark. 2003).

Mid-Continent argues that Shelter waived its right to cease defending Mr. Rusek by promising to provide reasonable notice to him. However, Shelter waived neither an exclusion nor a condition that existed for its benefit. It simply stopped paying for the defense of a person with no connection whatsoever to it. Therefore, any estoppel or waiver argument would have the effect of compelling Shelter to expand its coverage to a person not covered by the policy.

Nevertheless, Mid-Continent cited at least one case for the proposition that an insurance company who assumes a defense must provide notice before withdrawing from the case. However, the precise language of that decision requires the insured to show that an insurance company's failure to provide notice inflicted some prejudice on the insured:

> Where, as here, the right of withdrawal is, in the instrument drawn by the insurer, made dependent on the giving of proper notice, **such notice should be given at a time when the insured can take proper measures to defend the suit himself**, at least where the insurer, at the time it promises to give proper notice, has knowledge of all of the facts giving rise to the defense, or where it acquires such knowledge at a time sufficient to allow it **to give the required notice without unduly prejudicing the rights of the insured.**

*Western Cas. & Sur. Co. v. Newell Mfg. Co.,* 566 S.W.2d 74, 77 (Tex.Civ.App.-San Antonio 1978), writ refused n.r.e.

In the absence of any evidence that Mid-Continent or Mr. Rusek suffered any prejudice, the *Western Casualty* decision offers no support for Mid-Continent's legal argument.

Shelter's failure to notify Mid-Continent of its decision to stop funding Mr. Rusek's defense may have raised an issue of manners, but not of law.  Mid-Continent is not entitled to use this court to enforce a promise against Shelter because Shelter neither received any consideration for its promise nor induced anyone to rely on its promise.

Having reviewed the Plaintiff's Motion for Summary Judgment, Exhibit A, 19 petitions and amended petitions filed against Michael Rusk, Exhibit B, the policy held by Ellen Rusk, Exhibit C, the letters regarding the defense of Michael Rusk, and the Defendant's opposition to the Plaintiff's Motion for Summary Judgment, it is **ORDERED** that The Motion for Summary Judgment brought by the Plaintiff, MID-CONTINENT CASUALTY COMPANY is **DENIED.**

SIGNED at Houston, Texas, this 31st day of January 2006.


_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE